UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770



August 11, 2022

LETTER TO COUNSEL

    RE:    *Vanessa D-D. v. Kijakazi, Acting Commissioner of Social Security*
             Civil No. GLS 21-0240

Dear Counsel:

Pending before this Court are cross-motions for summary judgment, filed by Plaintiff Vanessa D-D., and the Social Security Administration. (ECF Nos. 13, 14). Upon review of the pleadings and the record, the Court finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2021).

The Court must uphold the decision of the Social Security Administration ("SSA" or "the Agency") if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* For the reasons set forth below, I will deny the motions, reverse the Commissioner's decision in part, and remand the case back to the SSA for further consideration.

I.     **BACKGROUND**

Plaintiff filed a Title II Application for Disability Insurance Benefits on August 21, 2018, and a Title XVI Application for supplemental security income on August 23, 2018, alleging that disability began on March 19, 2017. (Tr. 11). These claims were initially denied on January 11, 2019, and upon reconsideration, denied again on March 25, 2019. (*Id.*). On May 14, 2019, Plaintiff filed a written request for a hearing, which was granted. The first hearing was conducted on February 20, 2020 by an Administrative Law Judge ("ALJ"). (*Id.*). The ALJ presided over a second hearing on May 21, 2020. (Tr. 12). On August 11, 2020, the ALJ found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 16-22). On December 14, 2020, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final and reviewable decision of the SSA. (Tr. 1). *See also* 20 C.F.R. §422.210(a).

*Vanessa D-D. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-0240
August 11, 2022
Page 2

**II.     ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is deemed to have a disability if his/her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a); 416.920(a).  *See e.g., Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ are as follows:  step one, assess whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations ("the Listings").  If the first three steps are not conclusive, i.e., a claimant's impairment is severe but does not meet one or more of the Listings, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC").  A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)).  Also at step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments. Finally, at step five, the ALJ analyzes whether a claimant could perform jobs other than what the claimant performed in the past, and whether such jobs exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i) - 404.1520(a)(4)(v).

At steps one through four, it is the claimant's burden to show that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled. *Hunter v. Sullivan*, 993 F.3d 31, 35 (4th Cir. 1992).

Here, the ALJ evaluated Plaintiff's claim by following the sequential evaluation process outlined above.  (Tr. 14-21).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 19, 2017, the alleged onset date of Plaintiff's disability. (Tr. 14).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative joint disease and osteoarthritis of the right knee, degenerative joint disease of the right shoulder, degenerative disc disease of the lumbar and cervical spines, obesity,

*Vanessa D-D. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-0240
August 11, 2022
Page 3

hyperlipidemia, and hypertension. (*Id.*). The ALJ found these impairments were severe because these impairments significantly limit the Plaintiff's ability to perform basic work activities as required by SSR 85-28. (*Id.*). However, at step three the ALJ also determined that none of Plaintiff's impairments or combination of impairments met or medically equaled one or more of the Listings. (Tr. 14-15). Taking into account Plaintiff's severe impairments, the ALJ next assessed the claimant's RFC. Despite Plaintiff's severe impairments, the ALJ determined that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She can sit for 6 hours in an 8-hour workday. She can stand and walk for 6 hours in an 8-hour workday. She can only frequently (sic) with the right, dominant upper extremity reach in all directions, handle, finger, and feel. She can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, and scaffolds. She can only occasionally be exposed to vibration.

(Tr. 15-16). At step four, the ALJ found that Plaintiff was able to perform past relevant work as a hairdresser. (Tr. 19). Before making a finding regarding step five, the ALJ conducted a hearing. At that hearing, a vocational expert ("VE") testified about whether a hypothetical person with the same age, education, and work experience as the Plaintiff with her RFC could perform Plaintiff's prior work as a hairstylist. (Tr. 53-54). The VE testified that this hypothetical individual would be able to perform Plaintiff's past work as a hairstylist. (Tr. 54). The VE also opined that there would be unskilled work as a housekeeping cleaner, merchandise marker, and a cashier II that this person could perform. (*Id.*). The second hypothetical added the limitations that the individual was sedentary, could only push/pull 10 pounds frequently and lift the same weight occasionally, and could only stand and walk for 2 hours in an 8-hour workday. The VE testified that there was no past work that the hypothetical person could perform, however there was current unskilled work available as document preparer, table worker, and order clerk. (Tr. 55). Finally, the VE testified that the hypothetical individual could only miss one day/month or be off task no more than 10% during an 8-hour workday to be employable. (Tr. 56).

Regarding step five, then, the ALJ opined that based on the testimony of the vocational expert, i.e., considering Plaintiff's age, education, work experience, and RFC, Plaintiff was not disabled. Plaintiff could perform other work existing in significant numbers existing in the national economy, e.g., as housekeeping cleaner, merchandise marker, or a cashier II. (Tr. 21).

**III.   DISCUSSION**

On appeal, Plaintiff advances two arguments. First, that the ALJ erroneously evaluated her subjective complaints of pain. Second, when assessing Plaintiff's RFC, the ALJ erred in how he considered Plaintiff's obesity and other impairments. (ECF No. 13-1, "Plaintiff's Brief," pp. 7-13).

*Vanessa D-D. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-0240
August 11, 2022
Page 4

Regarding her complaints of pain, Plaintiff contends that the ALJ "specifically rejected the Plaintiff's testimony regarding her subjective complaints on the basis that her complaints were not supported by objective evidence." ( Plaintiff's Brief, p. 7). Plaintiff relies principally upon *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020) and *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006) to support her argument for remand. (*Id.* at 10). In response, the SSA counters that Plaintiff misinterprets the holding of *Arakas*, which is limited to conditions like fibromyalgia that do not necessarily have objective medical evidence to support its symptoms. According to the Defendant, this case involves degenerative disc and joint diseases for which objective medical evidence "is highly relevant to substantiating symptom allegations." (ECF No. 14-1, "Defendant's Brief," pp. 11-13).

I have carefully reviewed the arguments and the record. I find that the ALJ erred by failing to explain how he considered Plaintiff's subjective complaints. Accordingly, I find that remand is appropriate, for the reasons set forth below. Because this case is being remanded, I will not address Plaintiff's second argument.

When evaluating whether a claimant is disabled, an ALJ must engage in a two-step analysis of a claimant's subjective statements "about [her] impairments and symptoms." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); *see also* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c). At step one, the ALJ considers whether objective medical evidence exists of a condition that could reasonably be expected to produce the claimant's "alleged symptoms." *Id.* Next, assuming that the claimant satisfies this initial requirement of showing a medically determinable impairment, the ALJ proceeds to step two. At step two, the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* §§ 404.1529(c), 416.929(c). In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ is to consider "all of the evidence presented," including a claimant's: (a) prior work history; (b) statements about her symptoms; (c) evidence from medical sources; (d) activities of daily living; (e) medication; and (f) treatment to relieve symptoms. *Id.*

At this second step, the ALJ assesses the credibility of a claimant's statements about her symptoms and whether they affect her ability to perform her work duties. *Lewis*, 858 F.3d at 865-66. The regulations provide that an ALJ should consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's statements about her symptoms] and the rest of the evidence." The idea is to determine whether a claimant's statements "can reasonably by accepted." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also Craig*, *supra*, 76 F.3d at 595.

In performing this two-step analysis, an ALJ must keep in mind the medical condition at issue. If it is like fibromyalgia, then objective evidence may not exist to support a claimant's symptoms. In such a circumstance, the Fourth Circuit has made clear that it is improper for an ALJ to rely upon objective medical evidence to discount a claimant's subjective complaints about her symptoms. *Arakas*, 983 F.3d at 97. If a claimant suffers from a disease or condition for which there is objective medical evidence that supports or refutes its existence, like degenerative joint or disc disease, then an ALJ may consider that evidence in combination with other evidence in the

record. *Patricia P. v. Kijakazi*, Civ. No. TJS-21-565, 2022 WL 683088, at *3 (D. Md. Mar. 8, 2022); *James A. v. Kijakazi*, Civ. No. JMC 20-1992, 2021 WL 4975178, at *3 (D. Md. Oct. 26, 2021); *see also* 20 C.F.R. § 416.929(c)(4).

In either scenario, at the second step, an ALJ may not reject a claimant's subjective statements about the intensity and persistence of her pain **solely** because there is no objective medical evidence to support them. *Arakas*, 983 F.3d at 95; *see also Hines*, 453 F.3d at 561; s*ee also* 20 C.F.R. § 404.1529(c) (emphasis supplied). Put another way, at step two, a claimant may rely exclusively on "subjective evidence to prove the degree to which [her] symptoms affect [her] ability to work." *Carolyn L. v. Kijakazi,* Civ. No. TJS 20-3686, 2022 WL 897137, at *3 (D. Md. Mar. 28, 2022). Furthermore, if an ALJ is going to reject a claimant's subjective statements as incredible or inconsistent with the evidence, it is important for the ALJ to make a finding regarding a claimant's credibility and to specifically refer to the evidence upon which the ALJ relies to reach his/her credibility determination. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985); *see also Carolyn G. v. Kijakazi*, Civ. No. ADC 20-1363, 2021 WL 2982129, at *5 (D. Md. July 15, 2021).

In the instant case, the ALJ found that the Plaintiff suffers from degenerative joint disease and osteoarthritis of the right knee, degenerative joint disease of the right shoulder, degenerative disc disease of the lumbar and cervical spines, obesity, hyperlipidemia, and hypertension. (Tr. 14). Plaintiff's Brief is silent on whether these physical conditions are like fibromyalgia or "some other disease" that does not produce objective medical evidence. Thus, the ALJ could consider objective evidence in combination with other evidence in the record, like Plaintiff's subjective statements. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also Carollyn S. v. Kijakazi*, Civ. No. ADC 20-2552, 2021 WL 4170431, at *8 (ALJ appropriately considered objective medical evidence alongside other evidence, including Plaintiff's statements where Plaintiff did not allege medical condition was like fibromyalgia); *Patricia P.*, 2022 WL 683088, at *3 (same); *James A.*, 2021 WL 4975178, at *3 (same).

A review of the ALJ's written decision reveals that it contains a summary of Plaintiff's subjective complaints. The ALJ found that, at the hearing, Plaintiff testified about her pain, including: how her arthritis precluded her from working; how she could stand for only 2-3 hours before she had to lie down for 2-3 hours; she could only sit for 1 hour before she experienced "severe pain;" she was prescribed a pillow to aid her when she sits; and she could not reach "too quickly" with her right arm or she would experience pain in her wrist. (Tr.16, 41-43). The ALJ next held that Plaintiff's "medically determinable impairments could reasonably be expected to cause" her alleged symptoms. (Tr. 16). The ALJ also opined that the Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms "[were] somewhat inconsistent with the objective evidence in the record." (Tr. 16-17). Immediately thereafter, the ALJ spent several pages of the opinion listing all of the objective evidence that existed about Plaintiff's conditions, including imaging and MRI studies, treatment records, opinion evidence, and other medical records. (Tr. 17-19). After this cataloging, the ALJ found that the "objective medical evidence and opinion evidence. . .suggest[ed] greater sustained capacity than described by the claimant." (Tr. 19).

However, nowhere in the ALJ's opinion did he make a finding that Plaintiff's statements about her pain were incredible. *Hammond*, 765 F.2d at 426; *see also Monroe*, 826 F.3d at 189 (error where ALJ failed to build an accurate and logical bridge between the evidence and conclusion that claimant's testimony lacked credibility). Nor did the ALJ explain how, when fashioning Plaintiff's RFC, he accounted for her subjective statements about the pain she described experiencing after just a few hours of standing or sitting. (Tr. 16-19). In addition, when analyzing the objective evidence, the ALJ only mentions Plaintiff's pain in passing. For example, the ALJ found that despite Plaintiff's allegations of disabling pain, her treatment providers "routinely" described her as being in no "apparent" or "acute" distress. (Tr. 17). However, the ALJ never found, e.g., that Plaintiff's pain was successfully managed by treatment, or that she complained of pain over the years without a change in treatment or medication regimen. (Tr. 17-19). In short, the ALJ did not clearly articulate how he analyzed all of the objective evidence to discredit or reject Plaintiff's specific statements about the severity, persistence and limiting effects of her pain. (*Id.*). Thus, this Court cannot find that the ALJ appropriately considered Plaintiff's statements alongside the objective medical evidence, as required by the regulations and relevant case law.

In sum, the ALJ never clearly explained how Plaintiff's statements were incredible or inconsistent with the objective medical evidence. (Tr. 17-19). Nor did the ALJ clearly explain why Plaintiff could not rely exclusively on her subjective statements about her inability to sustain work continuously throughout an eight-hour day. As written, I cannot find that substantial evidence exists to support the ALJ's decision. Thus, remand is required.

On remand, the ALJ should provide a narrative discussion that explicitly references the subjective statements, how and why he discounted them, and explain how the objective and subjective evidence supports his conclusions.

**IV.    CONCLUSION**

For the reasons set forth above, both parties' summary judgment motions (ECF Nos. 13, 14) are **DENIED**. In addition, consistent with sentence four of 42 U.S.C. § 405(g), the Agency's judgment is **REVERSED IN PART** due to inadequate explanation. The case is **REMANDED** for further proceedings in accordance with this opinion. I express no opinion as to whether the ALJ's ultimate finding that Plaintiff is not disabled, and therefore, not entitled to benefits, is correct. The Clerk of the Court is directed to **CLOSE** this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such. A separate Order follows.

Sincerely,

_____/s/_____
The Honorable Gina L. Simms
United States Magistrate Judge